**TIMBERLINE SAWMILL AND LUMBER INC., and State Compensation Insurance Fund, Petitioners,**

v.

**INDUSTRIAL COMMISSION OF the State of COLORADO, and Cindy Jean Eller, Respondents.**

No. 80CA0223.

Colorado Court of Appeals, Div. II.

Jan. 29, 1981.

James A. May, William J. Baum, Kathleen W. Robinson, Denver, for petitioners.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Laura J. Reilly, Asst. Atty. Gen., Denver, for respondent Industrial Commission of the State of Colorado.

BERMAN, Judge.

Employer and the State Compensation Insurance Fund (Insurer) seek review of an award for purposes of vocational rehabilitation to a workmen's compensation claimant. We affirm.

On November 15, 1977, claimant, then 20 years of age, was injured while at work in employer's sawmill when the machine she was using to band sawn lumber slipped and bruised the heel of her left hand. Insurer admitted liability and began paying claimant weekly disability benefits.

Claimant underwent surgery, and, on May 25, 1978, her physician, notified Insurer that as of May 23, 1978, claimant's recovery was complete, that she had no disability, and that she was able to return to full work. In June, 1978, claimant did return to work, but left after about two weeks complaining of intermittent wrist pain.

Upon further examination, her physician opined that the continuing pain resulted not from effects of her injury, but from mill work being too heavy for a person of claimant's body size. He stated, "I feel the wrist pain ... should be completely resolved if she [claimant] changed job positions." Since claimant's injury, though, she has made no effort to secure less physically strenuous employment. Instead, claimant requested vocational rehabilitation.

As a result of claimant's request, Insurer sought claimant's reexamination by a physician of Insurer's choice. Based upon his examination, that physician concluded, *inter alia*, that

> "since she [claimant] was [previously] doing the work and that others are doing it that aren't any bigger than she is and considering the fact that she does not actually have to lift this lumber, indicates to me that *she would have been able to return to work if it had not been for her carpal tunnel syndrome and subsequent surgery.*" (emphasis added)

## I.

On this review, petitioners argue first that claimant's work-related injury has not been the cause of her inability to return to work and, therefore, that claimant is not entitled to receive vocational rehabilitation.

In this regard, petitioners note that claimant has not sought permanent disability benefits. It is insisted that unless claimant is in some way disabled as a result of her work-related injury, it is paradoxical to order rehabilitation.

The statute underlying the award is § 8–49–101(4), C.R.S.1973 (1979 Cum.Supp.). It reads as follows:

"Every employee who has suffered an injury covered by this article shall be entitled to vocational rehabilitation at a facility or institution approved by the division when, as a result of the injury or occupational disease, he is unable to perform work for which he has previous training or experience."

Also pertinent is Industrial Commission Rule II(f), 7 *Code Colo.Reg.* 1101–3 at 15, promulgated under the authority of § 8–46–108, C.R.S.1973, to effectuate the above statute. It specifies that a "qualified worker" for rehabilitation means an employee:

"1) The effects of whose injury or occupational disease *permanently* preclude the employee from both engaging in his or her usual and customary occupation and preclude the employee from the performance of work for which he or she has previous training or experience, as determined by competent medical evidence and opinion. . . ."

Petitioners' argument raises the following specific questions:

(1) whether claimant's inability to return to work is "as a result of the injury" within the meaning of the above statute, and

(2) whether claimant's inability to return to work is due to "[t]he effects of [her] injury" within the meaning of the above rule.

It is not contended that the Commission, in adopting Rule II(f)(1), acted inconsistently with, or improperly interpreted the underlying statutory provision. Indeed, insofar as it pertains to the instant issue, the rule's language merely restates, rather than interprets, that of the statute. Thus, for purposes of the instant case, the statutory question and the question under the rule may be treated as one. The referee answered that combined question in the affirmative. Upon review of the referee's order, the Industrial Commission, citing both the statute and its own rule, upheld the referee.

■ The instant combined question is one of fact. As such, the Commission's resolution of it, if supported by substantial evidence, is binding upon this court. *Sena v. World of Sleep, Inc.*, 173 Colo. 348, 478 P.2d 671 (1970). Here, the Insurer's physician's report constitutes substantial evidence in support of the Commission's conclusion that claimant's inability to return to work resulted from her injury. On this review, therefore, we are bound by that determination.

■ Further, the apparent paradox raised by claimant's failure to assert any permanent disability claim, yet requesting rehabilitation, is easily resolved. Though not asserted by claimant, it is nevertheless, *implicit* in the Commission's findings that she was indeed disabled as the result of her injury. Thus, we have not here an anomalous claim which seeks "to restore to a former capacity"[1] one who has not been disabled in the first instance. Nor does the pertinent statutory scheme impose a burden upon one who seeks vocational rehabilitation to assert first a permanent disability claim. Rather, it provides that "any employee who is found to be eligible for vocational rehabilitation under this article shall not have his degree of permanent partial disability determined *until he has completed his vocational rehabilitation program.*" Section 8–49–101(5), C.R.S.1973 (1979 Cum. Supp.) (emphasis added). That claimant here has not yet asserted any such additional claim to which she may eventually become entitled thus erects neither a logical nor a statutory barrier to a vocational rehabilitation award.

---

1. Webster's New International Dictionary of the English Language (2 ed., 1934) at 2100, "rehabilitate": definition 1.

## II.

Petitioners next contend that claimant does not qualify for vocational rehabilitation because sawmill work is not her "usual and customary occupation" within the meaning of Industrial Commission Rule II(f)(1), supra.[2] However, the Commission's express finding that sawmill work "has been her [claimant's] only job for a number of years" finds support in claimant's hearing testimony, to-wit: "I worked at the sawmill ever since I was sixteen...." We thus are bound by the Commission's finding. Sena, supra.

## III.

Petitioners' final contention is that claimant is not by injury precluded from the performance of "work for which [she] has previous training or experience" within the meaning both of the rule and the underlying statute. In this regard, petitioners note that claimant has had work experience as a waitress, and has typing skills. Thus, they claim sawmill work is not the only "work for which [claimant] has previous training or experience."

Petitioners do not here challenge the validity of the rule itself. Rather, petitioners in effect urge that the Commission was bound to construe its own rule to require, as a precondition to eligibility for vocational rehabilitation, that a claimant's injury "preclude [her] from the performance of [all] work for which [she] has previous training or experience." Manifestly, the Commission chose not to interpret the word "work," as used both in the statute and the rule, to mean "all work."

An administrative agency's construction of its own rule is generally entitled to great weight; consequently, such construction will not be disturbed upon review unless it is plainly erroneous or inconsistent with such rule or the underlying statute. Van Pelt v. State Board for Community Colleges & Occupational Education, 195 Colo. 316, 577 P.2d 765 (1978). This especially so where, as here, the rule is adopted pursuant to an explicit legislative grant to the agency of power to promulgate to rules. Van Pelt, supra; see § 8–46–108, C.R.S.1973.

In the instant case, the Commission's construction of the rule at issue is not inconsistent with that rule, nor with the statutory language under which the rule was promulgated. Indeed, the limiting construction for which petitioners contend appears contrary to the purpose of the underlying statute in that it would exclude from eligibility for vocational rehabilitation all claimants who by happenstance possess residual job skills which are left unimpaired by the injury in question, whether or not those job skills would qualify the claimant for employment even remotely as gainful as that for which claimant is disabled. For example, here, it is undisputed that no other job for which claimant is currently qualified pays nearly as much as does sawmill work.

The Workmen's Compensation Act is remedial and beneficent in purpose; therefore, the Act should be liberally construed to accomplish that evident purpose. See, e. g., University of Denver v. Industrial Commission, 138 Colo. 505, 335 P.2d 292 (1959). The Commission's construction of the rule at issue comports with such purpose, and we decline on review to interfere with that construction.

Order affirmed.

SMITH and VAN CISE, JJ., concur.

---

2. The words "usual and customary occupation" do not appear in the underlying statute itself. However, it is again not contended that those words are in any way inconsistent with the purpose the statute seeks to advance.