**PRICE MINE SERVICE,
INC., Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OF-
FICE OF the STATE OF COLORADO,
TIG Insurance Company, National Un-
ion Fire Insurance Company, Lester G.
Connell, and Rocky Mountain Miners,
Respondents.**

No. 02CA0375.

Colorado Court of Appeals,
Div. I.

Jan. 2, 2003.

Weinberger & Kanan, P.C., Michael P. Serruto, Robert A. Weinberger, Denver, Colorado, for Petitioner.

Ken Salazar, Attorney General, John D. Baird, Assistant Attorney General, Denver,

Colorado, for Respondent Industrial Claim Appeals Office.

Ritsema & Lyon, P.C., Michael A. Perales, Nancy C. Hummel, Denver, Colorado, for Respondent TIG Insurance Company.

No Appearance for Respondent National Union Fire Insurance Company.

Withers Seidman & Rice, P.C., Christopher Seidman, Grand Junction, Colorado, for Respondent Lester G. Connell.

No Appearance for Respondent Rocky Mountain Miners.

Michael J. Steiner, Denver, Colorado, for Amicus Curiae Colorado Compensation Insurance Authority, d/b/a Pinnacol Assurance.

Ken Salazar, Attorney General, Frank R. Johnson, Assistant Attorney General, Denver, Colorado, for Amicus Curiae Colorado Department of Labor and Employment, Division of Workers' Compensation, and Mary Ann Whiteside, in her official capacity as the Director of the Division of Workers' Compensation.

Opinion by Judge PIERCE.*

■ The principal issue in this appeal is whether petitioner, Price Mine Service, Inc., or TIG Insurance Company is liable to pay workers' compensation benefits to Lester G. Connell (claimant) for injuries sustained in an automobile accident during the "quasi-course of employment." If the automobile accident is compensable as part of the original injury, then TIG is liable as the insurer on risk at the time of the original injury. If the accident constitutes a separate compensable injury, then Price Mine is liable as an uninsured employer at the time of the accident. We conclude that TIG is liable and, therefore, set aside the order to the contrary.

Claimant suffered a work-related injury in 1997 while working for Price Mine, which was then insured for workers' compensation liability by TIG. Claimant injured his right eye, nose, teeth, neck, right arm, back, right knee, and heel. TIG admitted liability and paid benefits relating to the original claim.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

Except for eleven weeks of uncompensated attempts to work, claimant did not return to work after the 1997 injury and remained unemployed in 1998 and 1999. In 1999, he was injured in an automobile accident while returning from authorized medical treatment for the 1997 work-related injury. Claimant aggravated the previous injuries to his back and neck and suffered additional injuries to his left shoulder and elbow.

By the time of the 1999 accident, Price Mine had ceased active business operations and no longer had any employees or workers' compensation coverage. All of the employees of Price Mine became employees of another corporation owned by the same individual, and that corporation obtained workers' compensation from another carrier. Price Mine continued its existence solely as a real estate holding company. TIG denied liability for the second accident.

On review, the Industrial Claim Appeals Office (Panel) held that an automobile accident occurring during the quasi-course of employment period constituted a "distinct compensable event." Therefore, it denied the claim against TIG and determined that Price Mine was liable for the additional workers' compensation benefits as an uninsured employer.

I.

Price Mine asserts that TIG is liable for claimant's subsequent injury, which was compensable by application of the quasi-course of employment doctrine. We agree.

■ Under the quasi-course of employment doctrine, an injury occurring during travel to or from authorized medical treatment for an industrial injury is compensable. An employer is required to provide medical treatment, and an injured employee is required to submit to it; thus, a trip to the doctor's office becomes an implied part of the employment contract. *Excel Corp. v. Indus. Claim Appeals Office*, 860 P.2d 1393 (Colo. App.1993).

§ 24–51–1105, C.R.S.2002.

■ Under the doctrine, the second injury is not considered an intervening event that would otherwise relieve the employer from further liability. *Citadel Mall v. Indus. Claim Appeals Office*, 892 P.2d 419 (Colo. App.1994).

Here, in concluding that the injuries sustained under the quasi-course of employment doctrine were not compensable consequences of the prior injury, but gave rise to a new claim for benefits, the Panel relied principally on *Employers Fire Insurance Co. v. Lumbermens Mutual Casualty Co.*, 964 P.2d 591 (Colo.App.1998). It found additional support in *City of Colorado Springs v. Industrial Claim Appeals Office*, 954 P.2d 637 (Colo. App.1997), and *Citadel Mall v. Industrial Claim Appeals Office, supra.*

However, the Panel has reached the opposite decision in other cases, holding that subsequent injuries compensable under the quasi-course of employment doctrine do *not* give rise to a new claim. We agree with this latter view and conclude that a quasi-course of employment injury is a compensable consequence stemming from the underlying industrial injury.

The quasi-course of employment doctrine was created to provide the requisite connection between the employment and an injury that would not otherwise be considered to have arisen out of and in the course of employment. *See* 1 *Larson's Workers' Compensation Law* § 10.05 et seq. (2002). It was designed to attenuate the usual requisites of compensability, and thus, injuries received while undergoing authorized medical treatment for an industrial injury are considered compensable even though they occur outside the ordinary time and space limits of normal employment. *Excel Corp. v. Indus. Claim Appeals Office, supra.*

Furthermore, the proximate and natural consequences of an industrial injury and quasi-course of employment injuries, as distinguished from injuries caused by a separate, efficient intervening event, are both considered to be within the range of compensable consequences of the original industrial injury. *See* 1 *Larson's, supra,* § 10.01 et seq. Both types of events are compensable because of their relationship to the underlying workers' compensation injury.

Thus, we agree with the view that quasi-course of employment injuries should not be treated any differently, for purposes of determining benefits and liabilities, from complications that are the natural and proximate results of the underlying industrial injury. The cases relied upon by the Panel for the contrary view can be distinguished factually or legally.

The determination whether the injury sustained under the quasi-course of employment doctrine was part of the first claim or a second claim was not central to the decision in *Employers Fire Insurance Co., supra.* There, the same insurer provided workers' compensation benefits at the time of the original injury and at the time of the later automobile accident injury during the quasi-course of employment. The dispositive determination on appeal was the effect of a release given after the original injury but before the automobile accident under circumstances where the claimant, unaware that the second claim was compensable under the Act, had made a claim for benefits under his no-fault policy.

Likewise, the determination whether the subsequent injury was compensable only as a separate claim also was not central to the analysis in *City of Colorado Springs, supra.* There, the question presented was whether the claimant was entitled to further temporary disability benefits when there was no credible evidence that he suffered increased physical restrictions after the second injury. The issue of which insurer was liable for the subsequent benefits was not presented. Indeed, the division recognized that because the second injury resulted from treatment for the first injury, the impairments resulting from both injuries might be considered together in determining the degree of permanent medical impairment.

Finally, *Citadel Mall, supra,* is factually distinguishable because in that case, unlike here, the claimant's injuries were the result of a separate, new employment relationship and an independent injury that occurred during that relationship, which had no physical or medical connection to the first injury.

The necessity for on-the-job training, resulting from the claimant's inability to perform his former job, was the only link to the first employer; the second employer was receiving the benefit of the claimant's secretarial services and partially paying for them at the time of the second injury.

Therefore, we conclude that an injury compensable based upon the quasi-course of employment doctrine is not a new claim, but is properly considered a compensable consequence of the original injury. Applying that rule to this case, TIG, as the insurer on risk at the time of the original 1997 injury, remains liable for the benefits payable as a result of the automobile accident in 1999, which was compensable based on the quasi-course of employment doctrine.

According to the Division of Workers' Compensation, this conclusion is consistent with the public policy of assuring that all employers have in effect current policies of insurance or self-insurance for workers' compensation benefits, as stated in § 8–47–111(1), C.R.S.2002. It also is consistent with the legislative declaration to "assure the quick and efficient delivery of disability and medical benefits to injured workers." Section 8–40–102(1), C.R.S.2002.

## II.

Because of this disposition, we need not address the alternative assertion that Price Mine was not subject to the Workers' Compensation Act in 1999 because it had no employees at that time.

The order is set aside, and the case remanded to the Panel to reinstate the original order obligating TIG to pay the temporary disability and medical benefits payable to claimant as a result of the 1999 automobile accident.

Judge MARQUEZ and Judge GRAHAM concur.